448 So.2d 1220 (1984)
Linda Jay ALLEN, Appellant,
v.
Jack Wayne CHILDRESS, Appellee.
No. 83-1832.
District Court of Appeal of Florida, Fourth District.
April 25, 1984.
Richard Bernstein of Fred J. Berman, P.A., Fort Lauderdale, for appellant.
No appearance on behalf of appellee.
BERANEK, Judge.
This appeal arises from a custody battle between the unmarried parents of a four-year old child. The trial court awarded custody of the child to his putative father *1221 after determining the mother unfit. We reverse.
From his birth until May, 1982, the child lived with his parents or under the care of his mother alone. In May, the respondent/father removed the child from the state and brought him to Tennessee. Petitioner/mother filed a proceeding seeking custody alleging that she feared the father would harm the child. The petition was referred to a general master who recommended that the Department of Health and Rehabilitative Services (HRS) investigate the homes of the father and mother. The report from the master specifically stated that the father resided in Knoxville, Tennessee, and that pending completion of the study, the child was to continue living with his father. The trial court ratified and approved all aspects of the master's recommendations in December, 1982.
Because HRS could not perform an investigation in Tennessee, it requested its counterpart in that state to do the home study. On April 4, 1983, the report on the father was sent to the general master with a cover letter stating that the child's circumstances were harmful and urging a prompt resolution of the petition. The report was also sent on the same day to HRS with a letter, a copy of which was sent to the master, stating, "We believe the child (name), has been harmed and continues to be harmed by his father, Jack Wayne Childress. We urge you to expedite your report to the court to prevent possible serious harm to the child." Apparently alerted by HRS to the situation, the mother immediately traveled to Tennessee in order to get her son back in her care and enticed respondent to return to Florida. HRS completed its report on the mother finding her to be a fit mother. The mother then petitioned the Florida court for temporary custody which was granted. The matter was set for a final hearing on the custody issue.
Both parents testified at the hearing. The trial court admitted into evidence the report prepared by HRS on the mother. However, the court refused to admit or consider the five-page report prepared by the Tennessee Department of Human Services which found the child to be in danger of harm and which recommended that the father should not even visit the child except briefly and under constant professional supervision. The trial court then issued its order of custody stating that "the paramount consideration of this court in determining custody is the best interest and welfare of this child." The court ignored the determination of HRS on the fitness of the mother and found her unfit based on the findings that she was on welfare, had lived with a variety of individuals, and had enticed respondent to return to Florida just to get her child back. The father, on the other hand, was found to have employment in Tennessee. Custody was awarded to the father in Tennessee. The mother was allowed visitation only under supervised conditions.[1]
The mother appeals, and as one would suspect, the father has not favored us with a brief. She contends that the trial court erred in not admitting the Tennessee report. The trial court found that the father was the fit parent to have custody based on his testimony at the hearing. The court refused to receive into evidence the report of the Tennessee Department of Human Services because "reports of this nature *1222 are very much the product of hearsay discussions, and I don't think ... it would be proper for this Court to take them and simply do it at face value." The court admitted the report prepared by HRS even though it was based on hearsay because Section 61.20, Florida Statutes (1983), permits it. This statute reads as follows:
61.20 Social investigation and recommendations when child custody is in issue.  In any action where the custody of a minor child is in issue, the court may request the Department of Health and Rehabilitative Services or qualified staff of the court to make an investigation and social study concerning all pertinent details relating to the child and each parent. The department or qualified staff of the court shall furnish the court with a written report with its recommendation with a written statement of facts found in its social investigations on which its recommendations are based. The court may consider the information contained in the report in making a decision on the child's custody and the technical rules of evidence do not exclude such report from consideration.
In other words, the court distinguished the two reports based on the state in which the report was prepared. We cannot understand how the trial court could issue an order directing that an investigation be done knowing one of the parties resided out of state and then refuse to consider the report on the investigation because it was done by a counterpart agency in the other state. The refusal to admit this report defeats the purpose of the above statute. Although the statute is written in discretionary terms, we believe that once a court decides to request a report, the court must at least read that report in order to determine whether or not it wishes to use the information contained therein in ruling on the custody issue. We hold that the trial court erred in not admitting the report prepared by the Tennessee Department of Human Services which agency has the same function and purpose as our HRS.
We are shocked at the overall inequities which this proceeding presented. Pursuant to Section 744.301(1), Florida Statutes (1983), the mother is the natural guardian of her son. As such, there must be a showing that she is unfit in order for the putative father to be awarded custody. In the Interest of R.L.G., a child, 274 So.2d 4 (Fla. 4th DCA 1973). Thus, the mother went into the courtroom with a statutory presumption in her favor. Furthermore, the mother had a favorable agency report while the father's report was unfavorable to say the least. Finally, the trial court was aware, or should have been aware, that the father's report indicated a very real danger of physical harm to a helpless infant. Under such circumstances, courts must act to protect the child, not merely to adjudicate the rights of parents. The guardian ad litem program[2] was specifically designed to prevent exactly the situation in which this child now finds himself. In this case it would certainly have been advisable to appoint a guardian at the time the court requested investigative reports.
Although not essential to our holding, we further comment that receiving welfare payments does not necessarily make a parent unfit any more than being financially secure makes a parent fit. Furthermore, living with a variety of individuals is not in and of itself indicative of unfitness particularly where the parents of the child are both unmarried and both have obviously lived with others.
We reverse and remand for further proceedings. The evidence, as it existed at the time of the ruling below, did not support an award of custody to the father. We recognize, however, that matters of child custody are subject to the continuing jurisdiction of the circuit court. Diaco v. Diaco, 363 So.2d 183 (Fla. 2d DCA 1978), and Hechler v. Hechler, 351 So.2d 1122 *1223 (Fla. 3d DCA 1977). We thus remand with instructions that custody be awarded to the mother of the child in accordance with Section 744.301(1), Florida Statutes (1983), unless evidence is presented demonstrating unfitness on the part of the mother.
REVERSED AND REMANDED.
DOWNEY and HURLEY, JJ., concur.
NOTES
[1] The court order read as follows:

2. The petitioner in this cause has not illustrated any means of support for at least the last five years and apparently exists on welfare. There is evidence that she has lived with a variety of individuals at least since the birth of this child. Including this child, there are two other children. The eldest of these children, a teenager, resides with the petitioner's mother. The petitioner's mother testified that petitioner did not contribute to this child's support.
3. Prior to April, 1983 the General Master in this cause placed custody of this child in the respondent, JACK WAYNE CHILDRESS. In April, 1983, the petitioner travelled to Tennessee to meet with the respondent. The petitioner readily admits that she told the respondent that she wanted them to get back together and that ruse was purely a subterfuge in order to entice the respondent to bring the minor child back to Broward County.
[2] The guardian ad litem program consists of volunteer guardians ad litem trained in the curriculum provided by the program administered through the office of the state court administrator, Supreme Court of Florida.